**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARYLAND CASUALTY COMPANY** | : | |
| | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **NO.  09- 857** |
| | : | |
| **EXPRESS PRODUCTS, INC.** | : | |

| | | |
|---|---|---|
| **CUMBERLAND MUTUAL FIRE INS. CO.** | : | |
| | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **NO.  08-2909** |
| | : | |
| **EXPRESS PRODUCTS, INC.** | : | |

**MEMORANDUM AND ORDER**

**Tucker, J.**                                                    **September ___ , 2011**

Presently before this Court are the Cross-Motions for Summary Judgment in two

consolidated actions.[1]  For the reasons set forth below, the Court denies Defendant's Motions for

Summary Judgment and grants summary judgment in favor of both Plaintiffs Maryland Casualty

Company and Cumberland Mutual Fire Insurance Company.

---

[1]      The relevant filings in the Cumberland Mutual action (Civ. Action No. 08-2909) are as follows:
Defendant's Motion for Summary Judgment (Doc. 15-1), Plaintiff Cumberland Mutual's Response in
Opposition thereto (Doc. 17-2 ), Plaintiff Cumberland Mutual's Cross-Motion for Summary Judgment
(Doc. 20), Plaintiff Cumberland Mutual's Memorandum in Support of Summary Judgment ( Doc. 21),
Defendant's Response in Opposition thereto (Doc. 24), Plaintiff Cumberland Mutual's Reply ( Doc. 27),
Defendant's First and Second Supplemental Memoranda in Support of Summary Judgment and
Opposition to Plaintiff Cumberland Mutual's Motion for Summary Judgment (Docs. 28, 30), and
Plaintiff Cumberland  Mutual's Sur-Reply in Support of Summary Judgment (Doc. 34).

The relevant filings in the Maryland Casualty action (Civ. Action No. 09-857) are as follows:
Defendant's Motion for Summary Judgment (Doc. 15), Plaintiff Maryland Casualty Company's Cross-
Motion for Summary Judgment (Doc. 20), Defendant's Response in Opposition thereto ( Doc. 36), and
Plaintiff Maryland Casualty Company's Reply (Doc. 38).

**I.  BACKGROUND**

This is a consolidated action.  Both Plaintiffs, Maryland Casualty Company ("MCC") and Cumberland Mutual Fire Insurance Company ("Cumberland"), bring these declaratory judgment actions for the purpose of determining the relative duties and rights under commercial general liability insurance policies subscribed to by Defendant Express Products Inc. ("Express" and "Defendant") with respect to claims in an underlying lawsuit.

Defendant is a Pennsylvania corporation.  Plaintiff Cumberland is a New Jersey corporation.  Plaintiff MCC is a Maryland corporation.  According to Plaintiff Cumberland, the Cumberland insurance policy (S201221-2) was in effect from April 26, 2001 through April 26, 2002.  According to Plaintiff MCC, it issued a policy (PPS 42097015) that was in effect from April 26, 2003 through April 26, 2004 and which was renewed from April 26, 2004 through April 26, 2005.  The policy language at issue is the same in both the Cumberland and MCC policies.

Details concerning the underlying lawsuit are as follows.  On December 30, 2004, Business Pro Communications ("BPC") initiated a class action lawsuit against Defendant in Illinois state court.  In BPC's amended complaint, it alleged conduct that occurred during Cumberland's and MCC's policy periods.  Specifically, BPC accused Defendant of transmitting thousands of unsolicited advertisements to the fax machines of the plaintiffs between February 27, 2002 through October 5, 2004, thereby violating the Telephone Consumer Protection Act ("TCPA"), the Illinois Consumer Fraud Act ("ICFA"), and committing the tort of conversion.  If proven to be true, the potential damages alleged against Defendant will likely exceed $75,000 since both the TCPA and ICFA provide statutory damages of $500.00 per violation and the

-2-

potential class includes at least forty (40) persons.

Plaintiff Cumberland seeks a declaration from this Court that no coverage exists for the claims against Defendant in the BPC suit.  Plaintiff's Complaint contains four counts.  Count I is for the Duty to Defend and Indemnify Property Damage.  Count II is for the Duty to Defend and Indemnify Advertising Injury.  Count III is for the Duty to Defend and Indemnify Expected of Intended Injury.  Count IV is for the Duty to Indemnify Knowing Violation of Rights.  Plaintiff argues that the Policy covers accidental property damage, and that Defendants act of sending the unsolicited ads was not accidental.  Plaintiff also argues that Defendants conduct does not fall within the "advertising injury" coverage contained in the Policy because the conduct did not violate a person's right to privacy.  Plaintiff next argues that the Policy explicitly excludes coverage for expected or intended injury, and that Defendant had to expect that each facsimile would use the ink, paper and tie up the machine of each recipient.  Finally, Defendant argues that the Policy excludes coverage for knowing violations of the rights of others, and that Defendant knew that transmitting the faxes may violate others' rights.

Plaintiff MCC also seeks a declaration from this Court that no coverage exists for the claims against Defendant in the BPC suit.  Plaintiff's Complaint contains three counts.  Count I claims there is no coverage because Defendant's conduct did not result in bodily injury or property damage, because Defendant's conduct was not accidental, and because Defendant's conduct is excluded since the injuries were expected or intended.  Count II claims there is no coverage because there was no "personal advertising injury" since there was no invasion of personal privacy rights, and because Defendant's conduct is excluded as knowing violations of the rights of others.  Finally, Count III claims that because Defendant's alleged conduct took

place over more than one policy period, an actual controversy exists concerning their respective rights and duties under the policies.

## II.  PROCEDURAL HISTORY

Plaintiff Cumberland filed its Complaint in federal court on June 20, 2008.  On October 15, 2008, Defendant filed its Answer.  On June 24, 2009, Defendant filed a Motion for Judgment on the Pleadings, which the Court denied on October 15, 2009.  On January 8, 2010, Defendant filed a Second Motion for Judgment on the Pleadings, which the Court is treating as a Motion for Summary Judgment.  On March 8, 2010, Cumberland filed a Cross-Motion for Summary Judgment.  On May 7, 2010, Defendant filed a Response in Opposition thereto.  On May 21, 2010, Cumberland filed a Reply.  On July 21, 2010 and August 19, 2010, Defendant filed Supplemental Memos in Support of its Motion.  On October 26, 2010, Cumberland filed a Sur-Reply Brief.

Plaintiff MCC filed its Complaint in federal court on February 27, 2009. Defendant filed its Answer on April 22, 2009.  On June 25, 2009, Defendant filed a Motion for Judgement on the Pleadings, which the Court denied on October 15, 2009.  On January 8, 2010, Defendant filed a Second Motion for Judgment on the Pleadings, which the Court is treating as a Motion for Summary Judgment.  On March 8, 2010, MCC filed a Cross-Motion for Summary Judgment.  On October 21, 2010, Defendant filed a Response in Opposition thereto.  On November 18, 2010, MCC filed a Reply Brief.

On December 9, 2010,  the Court heard oral argument on the cross-motions for summary judgement in both actions.  The Court now addresses these pending motions.

## III.  LEGAL STANDARD

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 501 (3d Cir. 2008).[2] A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986); Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  See Anderson, 477 U.S. at 248; Fakete v. Aetna, Inc., 308 F.3d 335, 337 (3d Cir. 2002).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof.  See Celotex v. Catrett, 477 U.S. 317, 327 (1986).  Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Scott v. Harris, 550 U.S. 372, 380 (2007).

---

[2]  As aforementioned, the Court shall treat Defendant's Motions for Judgment on the Pleadings filed pursuant to Federal Rule of Civil Procedure 12(c) as Motions for Summary Judgment. Generally, a court has discretion to convert a motion to dismiss into a motion for summary judgment where the parties have explicit notice of the Court's intention. See, e.g., Garcha v. City of Beacon 351 F.Supp.2d 213, 216 (S.D.N.Y.,2005). The threshold inquiry is whether the parties "should reasonably have recognized the possibility that the motion might be converted to one for summary judgment or whether they were deprived of a reasonable opportunity to meet facts outside the pleadings." See, e.g., Metrokane, Inc. v. Wine Enthusiast, 185 F.Supp.2d 321, 325 (S.D.N.Y.2002). Where both parties submit extrinsic evidence in support of their positions, a district court may fairly convert a motion to dismiss into one for summary judgment under Fed. R. Civ. P. 56. Id.

Under Fed. R. Civ. P. 56(e), the opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings.  See Martin v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial.  See Anderson, 477 U.S. at 249; Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007).  In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party.  See Horsehead Indus., Inc. v. Paramount Communications, Inc., 258 F.3d 132 (3d Cir. 2001).  The court must award summary judgment on all claims unless the non-moving party shows through affidavits or admissible evidence that an issue of material fact remains.  See, e.g., Love v. Rancocas Hosp., 270 F. Supp. 2d 576, 579 (D.N.J. 2003); Koch Materials Co. v. Shore Slurry Seal, Inc., 205 F. Supp. 2d 324, 330 (D.N.J. 2002).

## IV.  DISCUSSION

On these cross-motions for summary judgment, the Court must resolve the following four issues: (1) whether there is an actual case or controversy between the parties to this litigation; (2) which state's law governs these actions; (3) whether there exists a duty to defend or indemnify under the "Property Damage" coverage provisions of the insurance agreements between Defendant and the Plaintiffs; and (4) whether there exists a duty to defend or indemnify under the "Personal and Advertising Injury" coverage provision under the insurance agreements between Defendant and the Plaintiffs.  After reviewing the parties' arguments, the Court shall address each of these issues in turn.

### A.  Parties' Arguments

### *i.  Cumberland Action*

In Defendant's Second Motion for Judgment on the Pleadings (08-2909 Doc. 15-1 ("Def. Mot. for Summ. J. Cumberland")), which is to be treated as a Motion for Summary Judgment, Defendant argues that judgment should be entered in its favor because the action is moot and there is no longer an actual controversy between the parties.  To support this contention, Defendant argues that final judgment of $7,999,999.96 was entered against it and in favor of the plaintiffs in the underlying suit.  The judgment stipulates that those plaintiffs may satisfy the judgment "only from [Express's] insurance policies," including those issued by Cumberland. Defendant contends that because the judgment does not allow the underlying plaintiffs to attempt to collect from Defendant, Defendant has no interest in this lawsuit, and there is no actual controversy between it and Cumberland.  With respect to the duty to defend issue, Defendant argues that the issue is moot because (1) with the entry to final judgment in the underlying case, there is no longer a suit pending for which Defendant requires defense; and (2) Defendant actually received a defense in the underlying suit from another insurer, Maryland Casualty Company.  With respect to the indemnity issue, the judgment places both the interest in indemnity coverage and the ability to secure such coverage from Cumberland firmly in the hands of the underlying plaintiffs.  Any opinion this Court would issue on the question would be an advisory opinion; it would not bind those plaintiffs as non-parties, and Express has no interest in the outcome and its own position is not affected at this point whether or not there is indemnity coverage.

In Plaintiff Cumberland's Cross-Motion for Summary Judgment (08-2909 Doc. 21 ("Cumberland Mot. for Summ. J.")), Cumberland argues that Pennsylvania law, and not Illinois

law, applies to this dispute because the policy was negotiated, produced, and signed in Pennsylvania.  Cumberland claims that there is no duty to defend or indemnify Defendant under the "property damage" coverage provision (coverage A) of the insurance policy, which is available only for damage caused by an occurrence.  To support this contention, Cumberland claims that "blast faxing" does not amount to an "occurrence," which the Policy defines as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Cumberland argues that the transmission of unwanted faxes without receiving the recipients' express permission or invitation was not accidental or unintentional.  Cumberland also argues that the transmission of unwanted faxes resulted in "expected or intended" injury, and thus is explicitly excluded from coverage by the policy.

Additionally, Cumberland asserts that there is no duty to defend or indemnify Defendant under the "personal and advertising injury" coverage provision (coverage B) of the insurance policy, which defines "personal and advertising injury" as an injury arising out of one or more of several identified offenses.  Cumberland claims that the only one of the listed offenses that could potentially apply in this matter is the "oral or written publication of material that violates a person's right of privacy."  That said, Cumberland argues that the alleged harm arises solely from the improper transmittal of the faxes, rather than the content of the faxes themselves. Cumberland further posits that statutory construction of the "right to privacy" interest invoked is not related to one's interest in being left alone and instead is related to one's interest in protecting personal information from disclosure.  As such, this provision is not applicable to this matter where the potential plaintiff's sole complaint is not related to the content of the faxes but the mere fact that the faxes were sent.

In Defendant's Response in Opposition to Plaintiff's Cross-Motion for Summary Judgment (08-2909 Doc. 24 ("Def. Resp. to Cumberland")), Defendant initially argues that there is no conflict of law between Pennsylvania, New Jersey or Illinois, and the Court should apply the laws of the three states interchangeably. Defendant further argues that an insurer may refuse to defend only if the complaint allegations preclude any possibility of coverage and that clauses providing coverage are interpreted in a manner which affords the greatest possible protection to the insured. Defendant counters that Cumberland owed a defense under the Property Damage provision of the policy. To support this contention, Defendant argues that the policy defines property damage as "physical injury to tangible property" and "loss of use of tangible property that is not physically injured." Defendant also notes that "accidental" is not defined by the policy. Defendants also contend that the underlying complaint alleges Defendant is liable even if its actions were negligent, thus negating Cumberland's exclusion argument, which is based on intended or expected injury. Defendant further notes that its President submitted an affidavit explaining that Defendant did not expect or intend and property damage injuries from the fax transmissions. Rather, Defendant believed it had the consent of the companies listed in its database to receive information by fax because they had provided their fax numbers to Defendant.

Moreover, Defendant counters that Cumberland owed a defense under the Personal and Advertising Injury provision of the policy because the provision covers blast fax claims. Defendant notes that the Telephone Consumer Protection Act ("TCPA") was enacted to protect privacy rights by restricting unsolicited facsimile transmissions. Defendant further notes that the TCPA's concern for "invitation or permission" expressly implicates one's interest in seclusion or

privacy.  Defendant states that the clause is ambiguous in that it could be interpreted according to

Cumberland's plain meaning interpretation or Defendant's interpretation.  When such ambiguity

exists, Defendant argues, the Court should construe the ambiguous provisions in favor of the

insured.

In Plaintiff Cumberland's Reply Brief in Support of its Cross Motion for Summary

Judgment (08-2909 Doc. 27 ("Cumberland Reply")), Cumberland argues that contrary to

Defendant's arguments, a choice of law analysis is required because of the disparity between

Pennsylvania and Illinois law on the ultimate issue of coverage for TCPA claims under the

provisions at issue.  Cumberland highlights that under Pennsylvania law, an insurer's duties to

defend and indemnify are triggered solely by the language of the complaint against the insured

and not by any other findings or admissions of fact in the final judgment or elsewhere in the

record.  Plaintiff further argues that the underlying complaint does not support Defendant's

conclusion that sending blast faxes was accidental conduct.

In Defendant's First and Second Omnibus Supplemental Memorandum in Support of its

Motion for Judgment on the Pleadings (08-2909 Docs. 28, 30), Defendant writes to inform the

Court of developments in the underlying case.  Specifically, Defendant notes that the Illinois

court decided to exercise jurisdiction over Cumberland and the garnishment claim brought by the

underlying plaintiffs.  Defendant contends that the garnishment claim will necessarily resolve the

issue of coverage.  According to Defendant, given that all parties with an interest in the question

are litigating the question in Illinois – and before the Court which presided over the underlying

class action itself - the reasons for this Court to decline to exercise its jurisdiction – and to

dismiss the case on the basis of mootness in respect to Defendant– are even stronger than they were when the parties filed their respective motions.

In Plaintiff Cumberland's Sur-Reply Brief (08-2909 Doc. 34 ("Cumberland Sur Reply")). Plaintiff argues that Defendant's Supplemental Memos are merely repackaged versions of the argument it previously advanced in its First Motion for Judgment on the Pleadings, which this Court rejected.

### ii.  Maryland Casualty Action

In Defendant's Second Motion for Judgment on the Pleadings (09-0857 Doc. 15 ("Def. Mot. for Summ. J. MCC")), which is to be treated as a Motion for Summary Judgment, Defendant argues that judgment should be entered in its favor because the action is moot and there is no longer an actual controversy between the parties.  This is essentially the same argument the Defendant raised in its Second Motion for Judgment on the Pleadings in the Cumberland case described above.

In Plaintiff MCC's Cross-Motion for Summary Judgment (09-0857 Doc. 20 ("MCC Mot. for Summ. J.")), Plaintiff present arguments similar to those presented in Cumberland's Cross-Motion for summary judgment.  MCC goes on to argue that even if the Underlying Litigation somehow could be found to be within the scope of coverage under the Policies, any potential duty to indemnify Express is precluded by Express' settlement of the Underlying Litigation without MCC's consent.  To support this argument, MCC notes that the Policies provide MCC with the right to defend and settle such claims, and precludes Express from settling without MCC's consent.  Specifically, the Policies require that the insured must "[c]ooperate with [Maryland Casualty] in the investigation and settlement of the claim or defense against the

'suit'," and further requiring that "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without [Maryland Casualty's] consent." MCC further argues that to the extent the Underlying Lawsuit is deemed to allege covered damages, the plain and unambiguous language of the Two or More Policies Endorsement restricts the total available limits of insurance to one policy's limits, as a matter of law.

In Defendant's Response in Opposition to Plaintiff MCC's Cross-Motion for Summary Judgment (09-0857 Doc. 36 ("Def. Resp. to MCC")), Defendant reiterates arguments similar to the ones it raised in its Response in Opposition to Plaintiff Cumberland's Cross-Motion for Summary Judgment.  Defendant further argues that Maryland surrendered control of the defense of the underlying action to independent counsel for Express Products due to inherent conflicts of interest between it and Express Products over potential findings in the action.  This was required by Illinois law, which prohibits conflicts of interest between insurers and insureds regarding potential findings in the litigation.  Defendant argues in the alternative that MCC's failure to object to the settlement within the period set by the underlying court to do so operates as implicit consent and a waiver of its argument that the settlement vitiates its indemnity obligations. Additionally, Defendant argues that the "Two or More Limits" Endorsement is inapplicable because the underlying suit is a combination of multiple claims, offenses and "occurrences" injuring multiple persons and the claims, occurrences and offenses that occurred in the first policy period are not the same claims, occurrences, and offenses that occurred during the second policy period.

In Plaintiff MCC's Reply Brief (09-0857 Doc. 38 ("MCC Reply")).  MCC reiterates the arguments made in its Cross-Motion.  MCC also argues that Defendant provides no legal or factual basis to support the application of Illinois law.

**B.  Analysis**

As an initial matter, the Court notes that an insurer's duty to defend is broader that its duty to indemnify.  Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1991).  See, e.g., Gen. Accident Ins. Co. of America v. Allen, 547 Pa. 693, 692 A.2d 1089, 1095 (1997) (recognizing that the duty to defend is separate from and broader than the duty to indemnify); Gedeon v. State Farm Mut. Auto. Ins. Co., 410 Pa. 55, 188 A.2d 320, 321-22 (1963) (The obligation of an insurance company to defend its insured is much broader than its duty to indemnify, and is invoked only when the allegations in the complaint filed by the injured party may potentially come within the policy's coverage).  Should the Court conclude that Cumberland and MCC have no duty to defend Express in the underlying litigation, then it must also conclude that they do not have a duty to indemnify Express. Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 226 (3d Cir. 2005).  The duty to defend is assessed by comparing the complaint to the policy. Melrose Hotel Co. v. St. Paul Fire and Marine Ins. Co., 432 F. Supp. 2d 488, 496 (E.D. Pa. 2006) (citing United Servs. Auto Ass'n v. Elitzky, 358 Pa. Super. 362, 517 A.2d 982, 985 (1986).

**i.  Case or Controversy Between the Parties**

In its Motion for Judgment on the Pleadings, Defendant argues that it has no interest in this lawsuit, and so there is no actual controversy between the parties. (Def. Mot. for Summ. J. Cumberland 2.)  In support, Defendant recites that, in settling the underlying lawsuit, the underlying plaintiffs covenanted with Defendant not to execute on the judgment against any asset

or property of any kind of Defendant's, but rather to pursue collection of the judgment solely against Defendant's insurance policies. (Def. Mot. for Summ. J. Cumberland 2.)  Therefore, Defendant argues, Cumberland has no duty to defend, because there is no suit in which Express requires defense, and no duty to indemnify, because the judgment placed the interest in indemnity coverage and the ability to secure such coverage firmly in the hands of the underlying plaintiffs. (Def. Mot. for Summ. J. Cumberland 3-4.)  Defendant further argues that any opinion this Court renders would be advisory, and not bind the underlying plaintiffs as non-parties.  (Def. Mot. for Summ. J. Cumberland 5.)

In opposition, Cumberland contends that Defendant misunderstands the "case and controversy" requirement under the Federal Declaratory judgment Act, 28 U.S.C.A. § 2201. (Cumberland Resp. 1.)  Cumberland argues that any agreement between the Pace Communications plaintiffs and Defendant to protect personal assets of Defendant has no relevance to, and does not render moot, the ongoing dispute over coverage provided under Cumberland's insurance policy. (Cumberland Resp. 1-2.)

Under the United States Constitution, courts are permitted to decide legal questions only in the context of actual cases or controversies. Alvarez v. Smith, -- U.S. --, 2009 WL 4573274, at *4 (Dec. 8, 2009).  "An actual controversy must be existent at all stages of review, not merely at the time the complaint is filed." Id. (quoting Preiser v. Newkirk, 422 U.S. 395, 401 (1975)).  To satisfy the requirement of an actual case or controversy under Article III of the United States Constitution, a matter must concern: (1) "a legal question that is real and not hypothetical"; (2) "a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication"; and (3) "a legal controversy so as to sharpen the issue for

judicial resolution." <u>Travelers Ins. Co. v. Obusek</u>, 72 F.3d 1148, 1154 (3d Cir. 1995) (citing

<u>Armstrong World Industries, Inc. v. Adams</u>, 961 F.2d 405, 411 (3d Cir. 1992)).   <u>See also</u>

<u>Maryland Cas. Co. v. Pacific Coal & Oil Co.</u>, 312 U.S. 270, 273, 61 S. Ct. 510, 512 (1941)

("Basically, the question in each case  is whether the facts alleged, under all the circumstances,

show that there is a substantial controversy, between parties having adverse legal interests, of

sufficient immediacy and reality to warrant the issuance of a declaratory judgment.").

        In the present case, there exists an actual case or controversy between the parties.  First, a

legal dispute exists as to whether Plaintiffs, pursuant to the insurance policies, owe Defendant a

duty to defend and indemnify in the underlying suit.  While the Plaintiffs would have to pay the

plaintiffs in the underlying suit, not Express, that payment is premised on the relationship

between the parties in this particular case, which is in dispute.  Second, the outcome of this

dispute will affect both Plaintiffs in a concrete manner.  If the Court determines that, under the

insurance contracts, they must defend and indemnify Defendant, they will be forced to pay the

plaintiffs in the underlying dispute.[3]  Finally, it is clear that judicial resolution is required to

determine the duties owed by Plaintiffs to Defendants.

        Contrary to Defendant's argument, the fact that the underlying suit has been settled does

not render moot Cumberland's duty to defend.  The dispute remains relevant for the purpose of

determining whether Cumberland is entitled to reimbursement for the defense costs it has paid

under a reservation of rights.  Furthermore, Defendants argument that Cumberland owes

---

[3] Defendant does not allege that the underlying suit resolved with judgment in its favor, with no
possibility of liability for indemnification under the insurance policies.  The underlying suit was
terminated in a way that directly impacts Plaintiffs unless and until there is a determination that the
policy does not provide coverage for Defendant's actions alleged in the Illinois litigation.

defendant no duty to indemnify because the judgment placed the interest in indemnity coverage and the ability to secure such coverage firmly in the hands of the underlying plaintiffs is also flawed. The rights of the underlying dispute's plaintiffs to the policy proceeds are dependent on the obligations owed Defendant under the insurance policies. The underlying plaintiffs have no contractual privity with Cumberland and are not otherwise entitled to pursue a direct action against Cumberland on the subject insurance policy.[4] Here, Defendant is the only party who can pursue a claim against Plaintiffs for proceeds under the insurance policy.

Therefore, Express's Motion for Judgment on the Pleadings should be denied, as an actual case or controversy exists for this Court to determine.

### ii.  Choice of Law

A major issue in this case, which will determine the outcome of the Motions for Summary Judgment, is whether Pennsylvania, Illinois, or New Jersey law will govern. A federal court sitting in a diversity action "must apply the choice of law rules of the forum state to determine what substantive law will govern." Huber v. Taylor, 469 F.3d 68, 73 (3d Cir. 2006) (citing Klaxon v. Stentor Electric Manufacturing Co., 313 U.S. 487 (1941)). With regard to choice of law issues, the Third Circuit has predicted that Pennsylvania courts will follow "the law of the forum with the 'most interest in the problem,' rather than the law of the place of injury." Hammersmith v. TIG Ins. Co., 480 F.3d 220, 227 (3d Cir. 2007). Third Circuit courts

---

[4] See, e.g., Kollar v. Miller, 176 F.3d 175, 181 (3d Cir. 1999) ("[i]n the absence of a statute or policy provision on which such right may be predicated, a person may not maintain a suit directly against [an] insurer to recover on a judgment rendered against the insured") (applying Pennsylvania law); Aetna Ins. Co. v. Pennsylvania Manufacturer's Ass'n Ins. Co., 456 F. Supp. 627, 634 (E.D. Pa. 1978) ("one who suffers injury within the provisions of a liability insurance policy is not in privity of contract with the insurer of the alleged tort feasor, and cannot bring an action directly against the insurer on the claim").

have interpreted this to mean that a court applying Pennsylvania's choice of law should use the Second Restatement of Conflict of Laws as a starting point. Id. at 233.  Section 188(2) of the Second Restatement provides that for the purposes of litigation involving matters of contract interpretation, a choice of law analysis should take into account the following factors: the place of contracting; the place of negotiation of the contract; the place of performance; the location of the subject matter of the contract; and the domicile, residence, nationality, place of incorporation and place of business of the parties.

The following facts are particularly relevant to the choice of law analysis.  At all times relevant to this case, Defendant's principal place of business was located at 18 Cassel Road in Souderton, Pennsylvania. (Cumberland Mot. for Summ. J. 9.)  At all times relevant to this case, American Insuring Group, Ltd. ("American Insuring"), located at 37 West Lancaster Avenue in Shillington, Pennsylvania, was Defendant's insurance broker. (Cumberland Mot. for Summ. J. 9.)  The negotiations between Defendant and American Insuring, concerning the policy application and amount of coverage under the Policy, occurred solely in the Commonwealth of Pennsylvania. (Cumberland Mot. for Summ. J. 9.)  The Policy was delivered to Defendant's principal place of business in Pennsylvania. (Cumberland Mot. for Summ. J. 9.)  While Cumberland maintains its headquarters in Bridgeton, New Jersey, the Policy was issued by Cumberland's office at Ridgewood Corporate Center, Suite 410, Downington, Pennsylvania. (Cumberland Supp. for Summ. J. 5.)  Neither Express, American Insuring, nor Cumberland maintained a principal place of business in Illinois at any time during the policy period. (Cumberland Mot. for Summ. J. 9.)  MCC is headquartered in Schaumburg, Illinois. (Def. Resp. to MCC 8.)  MCC's Policies were issued through the Blake Agency, Inc., located in

Pennsylvania. (MCC Reply 5.)  MCC's Policies were issued to Defendant at its Pennsylvania

address. (MCC Reply 5.)  MCC's Policies incorporate Pennsylvania-specific endorsements

applicable to Pennsylvania insureds and list only one insured location, in Pennsylvania. (MCC

Reply 5.)

Defendant states that "three of the five factors would be divided between Pennsylvania

and New Jersey, one favors Illinois and the last is dispersed throughout the country – but favors

Illinois in the context of this action." (Def. Resp. to Cumberland 3.)  Defendant fails to cite any

case law in support, or argue as to why this is so, simply stating that it is.  Nor does Defendant

specify which of the factors weighs in favor of Illinois law.  Defendant then states that a choice

of law analysis is not necessary because there is no conflict of law between the potential states.[5]

(Def. Resp. to Cumberland 3.)  Defendant also argues that Illinois law should apply as to the

dispute with MCC because MCC is an Illinois insurer covering claims made by an Illinois

Plaintiff in an Illinois lawsuit. (Def. Resp. to MCC 9.)

The Court finds that Defendant's argument that there is no conflict between the laws of

New Jersey, Illinois and Pennsylvania is flawed.  The outcome of this declaratory judgment case

turns on the very issue of whether Illinois or Pennsylvania law should govern this proceeding, as

the states have read similar insurance contract provisions differently.

---

[5] In support, Defendant recites general legal principles that all three states follow: interpretation of an
insurance policy is a question of law; insurer's defense obligation triggered by a claim against the insured
alleging facts potentially within the scope of the policy's coverage; any ambiguities in the policy
resolved in favor of the insured; policy language given its plain and ordinary meaning; and the insurer
bears the burden of proving the applicability of the exclusion as an affirmative defense.  (Def. Resp. to
Cumberland 4-5.)  Defendant relies on New Jersey and Illinois cases for support, disregarding the
contrary holdings of Pennsylvania cases regarding insurance contract interpretation in light of underlying
TCPA violations.

After careful analysis of the choice of law factors, the Court will follow appropriate Pennsylvania law.  First, MCC's and Cumberland's insurance policies were negotiated, produced, signed and delivered in Pennsylvania.  See Harry L. Sheinman & Sons v. Scranton Life Ins. Co., 125 F.2d 442, 444 (3d Cir. 1941) (an insurance contract is made in the state where it is delivered); Jamison v. Miracle Mile Rambler, Inc., 536 F.2d 560, 563 n.1 (3d Cir. 1976) (state of delivery is Pennsylvania where insured was incorporated and located)

Second, negotiations over both policies' content occurred in Pennsylvania, among representatives of Defendant's Souderton Office and American Insuring Group's Shillington office.  See Hammersmith, 480 F.3d at 234 (place of negotiation was found to be state in which the insurance brokers were located).

The place of performance, the third factor, is where the premiums are received, unless the policy explicitly provides otherwise.  See Armotek Industries Inc. v. Employers Ins. Of Wausau, 952 F.2d 756 (3d Cir. 1991); Gould Inc. v. Continental Cas. Co., 822 F. Supp. 1172, 1176 (E.D. Pa. 1993).  Here, there is no evidence in the record as to where premiums were received.

The location of the subject matter of the contract, the fourth factor of the choice of law analysis, refers to the location of the insured risk. Manor Care, Inc. v. Continental Ins. Co., 2003 WL 22436225, at *7 (E.D. Pa. 2003).  Here, as evidenced by the case against Defendant in Illinois, the risk insured by the policies is nationwide, spreading through multiple states, and so this factor is neutral.  See Hammersmith, 480 F.3d at 234 (regarding the location of the subject matter of the contract, "the insured risk in this case is spread throughout numerous states and countries. Therefore, this factor is neutral.").

The fifth, and final, factor, the domicile, residence, place of incorporation and place of business of the parties does not favor any specific State.[6]

Defendant's claim that the location of the underlying suit requires Illinois law to govern, or is even a factor to be considered, is contrary to Pennsylvania law.  See, e.g., McCabe v. Prudential Prop. & Cas. Co., 356 Pa. Super. 223, 514 A.2d 582, 586 (1986).  When analyzing each state's contacts under the Section 188 of the Second Restatement of Conflict of Laws, "courts are to focus on the contract of insurance rather than the underlying tort that give rise to the contractual dispute itself." Amica Mut. Ins. Co. v. Fogel, 2010 WL 3025179, at *7 (M.D. Pa. June 7, 2010) (citing Hammersmith, 480 F.3d at 232-33).  An analysis of the insurance contract leads to the conclusion that Pennsylvania law, not Illinois or New Jersey law, applies to this case.

In sum, the Court finds that the five (5) factors set forth in the Restatement (Second) of Conflict of Laws § 188 are either neutral or favor Pennsylvania law.[7]  Accordingly, the Court finds that Pennsylvania law governs the insurance contracts at issue.

### iii.  "Property Damage" Coverage Provision

The Court must now determine whether, pursuant to Pennsylvania law, Plaintiffs owe Defendant a duty to defend or indemnify under the "Property Damage" coverage provisions in their respective insurance policies.  See  Minnesota Fire & Cas. Co. v. Greenfield, 579 Pa. 333,

---

[6] Defendant's principal place of business is in Pennsylvania.  Defendant's broker, American Insuring, is located in Pennsylvania.  Cumberland's headquarters is in New Jersey.  MCC is headquartered in Illinois. Additionally, Comment (e) of the Second Restatement of Conflict of Laws Section 188 explains that the significance of the parties' domiciles "depends largely upon the issue involved and upon the extent to which they are grouped with other contacts."  For example, "[t]he fact that one of the parties is domiciled or does business in a particular state assumes greater importance when combined with other contacts, such as that this state is the place of contracting or of performance...." Restatement (Second) of Conflict of Laws § 188 cmt. e (1971).

[7] The Court also finds that none of the factors favor Illinois or New Jersey for the purpose of the choice of law analysis.

855 A.2d 854, 861 (2004) (holding that the interpretation of an insurance contract regarding the existence or non-existence of coverage is "generally performed by the court."). Under Pennsylvania law, interpretation of an insurance policy is a question of law suitable for summary judgment. Wagner v. Erie Ins. Co., 2002 Pa. Super. 166, 801 A.2d 1226, 1231 (Pa. Super. Ct. 2002). For the reasons that follow, the Court finds that Defendant does not fall within the "property damage" coverage provision and, even if it could be found that the "property damage" provision applied in this instance, Defendant would still be excluded from coverage by the "expected and intended injury" exclusion.

A court's duty in interpreting an insurance policy is to ascertain the intent of the parties as manifested in the language of the agreement. Travelers Cas. & Sur. Co. v. Castegnaro, 565 Pa. 246, 251 (Pa. 2001). Under Pennsylvania law, an insurance policy should be interpreted to avoid ambiguities, and the policy language "should not be tortured" to create them. Curbee, Ltd. v. Rhubart, 406 Pa. Super. 505, 594 A.2d 733, 735 (1991). "A provision is ambiguous only if reasonably intelligent persons, considering it in the light of the entire policy, can honestly differ as to its meaning." Id. When a "written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed." O'Connor-Kohler v. United Services Auto. Ass'n, 883 A.2d 673, 679 (Pa. Super. Ct. 2005). However, if the provision is "reasonably susceptible to more than one interpretation, it is ambiguous." Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (quoting McMillan v. State Mut. Life Assurance Co., 922 F.2d 1073, 1075 (3d Cir. 1990)).

Under Pennsylvania law, the burden of establishing coverage under an insurance policy rests with the insured. See Butterfield v. Giuntoli, 448 Pa. Super. 1, 670 A.2d 646, 651-52

(1995); Warner v. Employers' L. Assur. Corp., 380 Pa. 62, 133 A.2d 231, 233 (1957) ("While policies of insurance will be construed most strongly against insurer, (citation omitted) it is a necessary prerequisite to recovery upon a policy for the insured to show a claim within the coverage provided by the policy."). "An insurance company is obligated to defend an insured whenever the complaint filed by the injured party may potentially come within the policy's coverage. Pacific Indem. Co. v. Linn, 766 F.2d 754, 760 (3d Cir. 1983). An insurer's duty to defend a particular lawsuit is determined by the allegations of the underlying complaint.[8] Id.; Gen. Accident Ins. Co. of America v. Allen, 547 Pa. 693, 692 A.2d 1089, 1095 (1997) (after determining the scope of coverage under a policy, the court must examine the complaint in the underlying action to determine whether it triggers coverage). This rule applies even when the lawsuit is "groundless, false, or fraudulent." Britamco Underwriters, Inc. v. Weiner, 431 Pa. Super. 276, 636 A.2d 649, 651 (Pa. Super. Ct. 1994). The facts contained in the complaint, not particular legal theories advanced, must be examined, taken as true, and liberally construed in favor of the insured. Donegal Mut. Ins. Co. v. Baumhammers, 893 A.2d 797, 811 (Pa. Super. 2006) (citing Mut. Benefit Ins. Co. v. Haver, 555 Pa. 534, 725 A.2d 743, 745 (1999)); Frog, 193 F.3d at 746.

The insurance provisions at issue are the exact same in both Cumberland's and MCC's insurance policy. The relevant provisions read as follows:

---

[8] See also C.H. Heist Caribe Corp. v. American Home Assurance Co., 640 F.2d 479, 483 (3d Cir. 1981) ("the factual allegations of [the] complaint against [the insured] are controlling."); D'Auria v. Zurich Ins. Co., 352 Pa. Super. 231, 507 A.2d 857, 859 (1986) ("Thus, the insurer owes a duty to defend if the complaint against the insured alleges facts which would bring the claim within the policy's coverage if they were true. It does not matter if in reality the facts are completely groundless, false or fraudulent. It is the face of the complaint and not the truth of the facts alleged therein which determines whether there is a duty to defend.").

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

   * ****

   b. This insurance applies to "bodily injury" and "property damage" only if:

   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   *****

2. **Exclusions**

   This insurance does not apply to:

   **a.**  "Bodily injury" or "property damage" expected or intended from the stand-point of the insured.

   *****

**SECTION V – DEFINITIONS**

   *****

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

17. "Property damage" means

   a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(Cumberland Mot. for Summ. J. 6-8.) (MCC Mot. for Summ. J. 5-8.)

  In their respective Motions for Summary Judgment, Plaintiffs contend that they owe no duty to defend or indemnify pursuant to the clear and unambiguous policy language.  In support, they argue that the underlying complaint does not allege an occurrence and that coverage is excluded under the "expected or intended injury" exclusion.

  Both insurance policies provide coverage for "property damage" caused by an "occurrence."  Under both policies, "occurrence" is defined as an accident, including continuous or repeated exposure to substantially the same general harmful conditions.  In the present case, the underlying complaint alleged "property damage," in that Defendant's action resulted in physical injury to tangible property, through the use of paper and toner, and the loss of use of tangible property that is not physically injured, by tying up the fax.  The key issue here is whether Defendant's conduct was accidental or intentional in nature.

  The Pennsylvania Supreme Court has recognized that "accident," as used in a policy of liability insurance, "refers to an unexpected and undesirable event occurring unintentionally, and that the key term in the definition of 'accident' is 'unexpected' which implies a degree of fortuity." Baumhammers, 893 A.2d at 811.  An injury cannot be considered "accidental" if it is "the natural and expected result of the insured's actions." Id.  Under Pennsylvania law, the question of whether an injury resulted from an accident must be viewed from the insured's viewpoint. Nationwide Mut. Fire Ins. Co. of Columbus, Ohio v. Pipher, 140 F.3d 222, 226 (3d Cir. 1998).  When the conduct of the insured is alleged to be intentional, there is no accident. *See*

-24-

Kirkpatrick v. AIU Ins. Co., 204 F.Supp.2d 850, 854 (E.D. Pa. 2002).  Pennsylvania courts have

used a subjective standard when determining whether an insured intended an injury, looking to

whether the insured "desired to cause the consequences of his act or if he acted knowing that

such consequences were substantially certain to result." Elitzky, 517 A.2d at 989; see also Wiley

v. State Farm Fire & Cas. Co., 995 F.2d 457, 460 (3d Cir. 1993).  However, it is not sufficient

that the insured intends his actions; rather, for the resulting injury to be excluded from coverage,

the insured must have specifically intended to cause harm." Id.

In support of their Motions for Summary Judgment, Plaintiffs argue that the crux of the

underlying suit, sending unsolicited fax transmissions to unwilling recipients, does not constitute

unintentional conduct as a matter of law. (Cumberland Mot. for Summ. J. 8.)  They contend that

the First Amended Class Action Complaint is premised upon the contention that Defendant faxed

advertisements to numerous recipients without first receiving the recipients' express permission

or invitation, which does not allege unintentional conduct.  They further argue that, absent

express allegations that an entity acted negligently or otherwise unintentionally in sending the

faxes, a lawsuit based upon the contention that the entity acted unlawfully by sending such faxes

does not constitute an "accident" for purposes of invoking coverage under a commercial general

liability insurance policy. (Cumberland Mot. for Summ. J. 9.)  Furthermore, Plaintiffs argue that

any contention that Defendant did not intend to violate the TCPA is irrelevant to the

determination of whether the conduct at issue may be deemed "accidental." (Cumberland Mot.

for Summ. J. 10.)  According to Plaintiffs, the relevant question is not whether Defendant knew

that it violated the TCPA, but whether Defendant has been accused of intentionally engaging in

conduct causing damages that are the "natural and expected result" of such conduct.

(Cumberland Mot. for Summ. J. 10.)

Defendant argues that "the key issue is whether the allegations of the complaint preclude

a finding of negligence such that there is no "occurrence" under the policy or the policy's

"expected or intended injury" exclusion applies." (Def. Resp. to Cumberland 8.)  Defendant

argues that negligent conduct is alleged by the language that Defendant "knew or should have

known that its misappropriation of paper, toner and employee time was wrongful and without

authorization. (Def. Resp. to Cumberland 8.)  In support, Defendant points to the affidavit of

Defendant's President, who explained that Defendant did not expect or intend any "property

damage' injuries resulting from the fax transmission. (Def. Resp. to Cumberland 9.)  In further

support, Defendant relies on the judgment of the Illinois Court which found that "Defendant

believed that it had the recipients' consent when it sent the faxes" and that "Defendant did not

intend to injure the fax recipients." (Def. Resp. to Cumberland 9.)  Defendant also relies on

Telecommunications Network Design Inc. v. Brethren Mutual Ins. Co. for the proposition that a

claim for violation of the TCPA "does not have to be based on an intentional act, so there is a

duty to defend, at least until it bec[omes] clear that [the defendant] intentionally transmitted its

advertisements to the plaintiff class." 2007 WL 3760745, at *277 (Pa. D. & C.  2007).

As a preliminary matter, Defendant's reliance on Illinois and New Jersey case law is

misplaced.  As discussed above, Pennsylvania law applies to this case.  Defendant's argument

that the allegations of the underlying complaint do not preclude a finding of negligence is also

flawed.  While negligence may be found, the factual allegations of the underlying complaint are

to be looked at, not any particular legal theories put forth by the parties.[9]  The fact that "should have known" or "negligence" are mentioned in the complaint does not preclude a finding of intentional conduct.[10]  The Complaint makes statements that, if the court finds Defendant's acts to be willful, then treble damages could be awarded, and even if Defendant is negligent, he still violated the TCPA.  This does not present factual allegations that the Defendant was negligent.

As in Melrose Hotel, the complaint here fails to allege that the unsolicited nature of the faxes was the result of an accident on the part of Melrose and, in fact, alleges that Defendant intentionally sent faxes to class members who had not given prior express consent to receive those faxes.  432 F. Supp. 2d at 510.  In Melrose Hotel, the court concluded that sending the faxes cannot be deemed an "event" under the policy  "[b]ecause of the absence of: (1) any distinct allegations that [Defendant] acted negligently; (2) any evidence that the faxes were accidentally sent to those who did not wish to receive them; or (3) any evidence that [Defendant] believed that the faxes would go only to those who had authorized their receipt.  Id.

The instant matter presents the exact same circumstances as those presented in Melrose Hotel.  Defendant points to dicta in Brethren where the court states that it "disagrees with the Melrose Hotel court's holding.  While the failure to produce such evidence may justify a finding that there was ultimately no duty of the insurer to indemnify the insured, such evidence is rarely available at the time that the initial decision to defend a TCPA claim is made.  Since the TCPA

---

[9] See Baumhammers, 893 A.2d at 811 (The facts contained in the complaint, not particular legal theories advanced, must be examined, taken as true, and liberally construed in favor of the insured)

[10] See State Farm Fire & Cas. Co. v. Dalrymple, 153 F.Supp.2d 624, 628 (E.D. Pa. 2001) (noting that factual allegations in complaint trigger duty to defend, not simply using term "negligence"); Haver, 725 A.2d at 745 ("However, the particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint.")

claims in this case do not, and need not, specify whether the insured acted intentionally or accidentally, the insurer must defend until the matter of intent is resolved." 2007 WL 3760745, at *277 n.33.  However, here, the complaint, which the Court looks at to determining the existence of a duty to defend, alleges intentional acts by the Defendant.  The complaint states that *if* the court finds negligence instead of willful conduct, that Defendant would still be in violation of the TCPA.  This is not an allegation of negligence.  Furthermore, the <u>Brethren</u> court found a duty to defend under the "property damages" provision "because the amended complaint in the underlying action contained averments asserting the possibility that Paradise had unintentionally transmitted the advertisements to the plaintiff class. <u>Telecommunications Network Design, Inc.</u> <u>v. Brethren Mutual Ins. Co.</u>, 5 A.3d 331, 333 (Pa. Super. Ct. 2010).  Here, there is no averment in the underlying complaint that Defendant had unintentionally transmitted the advertisements.

Defendant's reliance on its President's affidavit, in which he stated that Defendant believed it had consent to send the faxes, is also misplaced.  When determining the duty to defend, the Court looks at the facts of the complaint.  Defendant's reliance on the Illinois Court's judgment is misplaced for the same reason, as it is not relevant to the issue of whether Plaintiffs owed Defendant a duty to defend the underlying suit.[11]

Defendant points out that in <u>Telecommunications Network Design, Inc. v. Brethren</u> <u>Mutual Ins. Co.</u>, the court found that, under similar circumstances and insurance provisions, there existed a duty to defend under the property damage coverage provision. 2007 WL 3760745, at *276.  However, there, in finding coverage, the court found it important that the insured utilized

---

[11]  See <u>Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.</u>, 589 Pa. 317, 908 A.2d 888, 896 (2006) (Under Pennsylvania law, an insurer's duties to defend and indemnify are triggered solely "be the language of the complaint against the insured.").

a third party to send out the faxes.[12]   The court stated that, without knowing the details of the

relationship between Canafax and Paradise, the court could not say for sure that Paradise was

being accused in the complaints of intentionally transmitting its advertisements to the class.  Id.

at *276-77.  Therefore, the court found that "Brethren had a duty to defend Paradise, at least until

such time as it became clear that the class's claim was that paradise intended to cause property

damage to the class." Id. at 277.

Here, the Court believes, as did the plaintiffs in the Underlying litigation, that Defendant

had intended to cause property damage to the class and that "[b]y sending unsolicited faxes to

[them], Defendant improperly and unlawfully converted [their] fax machine toner, paper,

memory, and employee time to Defendant's own use." (Doc. 21-4, 9.)  Unlike Brethren,

Defendant did not employ the use of a third party to transmit the unsolicited faxes; rather,

Defendant transmitted the faxes itself.  Instead, similar to Melrose Hotel, the record supports the

finding that Defendant's transmission of the faxes was intentional, not accidental.  Moreover, the

Court finds little credence in Defendant's contention that it believed it had consent to send the

faxes.  Nothing in the record besides this self-serving statement in the President's affidavit

supports such a conclusion.  Accordingly, the Court finds that Plaintiffs do not owe Defendant a

duty to defend or to indemnify under the "property coverage" provision of the insurance policies.

---

[12]  See Brethren, 2007 WL 3760745, *276 ( "It is possible that in hiring Canafax, Paradise did not intend or expect its advertisements to be sent to unwilling recipients and that Canafax did so without Paradise's knowledge and/or consent. It is also possible that Paradise provided Canafax with the list of class members' facsimile numbers and that Paradise thereby did intend tor expect to harm them.").

Plaintiffs further argue that, even if there may be a duty to defend under the "property damage" coverage provision, Defendant's alleged conduct was "expected or intended from the standpoint of the insured," and so excluded from coverage (Cumberland Mot. for Summ. J. 11.)

The interpretation of an exclusion clause in an insurance policy is a question of law for the court. Jefferson v. State Farm Ins., 380 Pa. Super. 167, 551 A.2d 283, 284 (1988).  An interpretation of an exclusion clause must be based on a reading of the policy in its entirety, giving words their plain and proper meaning. Great American Ins. Co. v. State Farm Mutual Ins. Co., 412 Pa. 538, 194 A.2d 903 (1963).  Under Pennsylvania law, for the purposes of interpreting an exclusion in an insurance contract, "an insured intends an injury if he desired to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result." Erie Ins. Exchange v. Muff, 851 A.2d 919, 928 (Pa. Super. Ct. 2004).  Similarly, an "expected injury" occurs when an insured 'acted even though he was substantially certain that an injury generally similar to the harm which occurred would result." Elitzky, 517 A.2d at 991.  Under Pennsylvania law, the relevant inquiry in determining whether conduct may be deemed "accidental" for the purpose of liability insurance coverage is not whether the party knew its conduct was in violation of the law, but whether the effects of its conduct were "the natural and expected result of the insured's actions." Baumhammers, 938 A.2d at 292.

Plaintiffs argue that Defendant's alleged conduct was not accidental because Defendant knew that sending facsimiles would result in use of toner, paper and ink.   In opposition, Defendant argues that it believed that it had consent, and so any injury was purely accidental.[13]

---

[13] Defendant relies on New Jersey and Illinois cases only to support its position.

Any contention that a policyholder believed it had implied permission to send advertisements by facsimile cannot render a violation of the TCPA "accidental" for purposes of liability insurance coverage. <u>Advent Home Mortgage Corp. v. Hartford Cas. Ins. Co.</u>, No. 06-1582, 2006 U.S. Dist. LEXIS 64631, at *9 (E.D. Pa. Aug. 14, 2006).

Here, Defendant intended to send facsimile advertisements to the putative class members. Further, the Court finds without question that Defendant knew that sending facsimile advertisements would result in the use of the underlying plaintiffs' fax, toner, paper and ink. While Defendant may not have desired to produce those results, Defendant certainly acted knowing those consequences were substantially certain to result. The transmission of a fax cannot be completed without using toner and paper. Moreover, sending a fax ties up the recipients fax machine during the transmittal. This conduct was clearly intentional and the consequences thereof were natural and expected. As previously discussed, Defendant cannot escape the consequences of its conduct by now pleading that it believed it had the consent of the plaintiffs in the Underlying action. For these reasons, the Court finds that the injury was expected or intended, and the exclusion clause applies to preclude coverage under the property damage provision of the insurance agreements.

### iv. "Personal and Advertising Injury" Coverage Provision

The Court now turns to whether Plaintiffs owe Defendant a duty to defend or indemnify under the "Personal and Advertising Injury" coverage provisions in their respective insurance policies. The insurance provisions at issue are the exact same in both Cumberland's and MCC's insurance policy.

Under Pennsylvania law, the burden of establishing coverage under an insurance policy rests with the insured.  See Butterfield, 670 A.2d at 651-52 (1995).  "An insurance company is obligated to defend an insured whenever the complaint filed by the injured party may *potentially* come within the policy's coverage. Linn, 766 F.2d at 760.  An insurer's duty to defend a particular lawsuit is determined by the allegations of the underlying complaint.  Id.  This rule applies even when the lawsuit is "groundless, false, or fraudulent." Weiner, 636 A.2d at 651.  The facts contained in the complaint, not particular legal theories advanced, must be examined, taken as true, and liberally construed in favor of the insured. Baumhammers, 893 A.2d at 811.

Here, the relevant provisions of the insurance policies read as follows:

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.      Insuring Agreement**

     a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence' and settle any claim or "suit" that may result.

*****

**SECTION V – DEFINITIONS**

*****

14. "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

*****

     e.   Oral or written publication of material that violates a person's right of privacy;

-32-

(Cumberland Mot. for Summ. J. 7-8.) (MCC Mot. for Summ. J. 8-9.)

In their respective Motions for Summary Judgment, Plaintiffs contend that they owe no duty to defend or indemnify pursuant to the clear and unambiguous policy language.  In opposition, Defendant argues that its actions do fall within the "advertising injury" coverage provision, but relies only on Illinois and New Jersey law to support its position, ignoring the Pennsylvania case dealing with this specific issue as it relates to the exact same policy language.

In Brethren, where the policy language of the "advertising injury" provision was the exact same as it is here, the court found that the alleged conduct did not fall within the provision.  In reaching the decision, the court found it important that the underlying complaint did not reference an invasion of privacy, rather, it alleged that the unsolicited faxes imposed costs without authorization of the class members by using their paper, ink and equipment.  Brethren, 5 A.3d at 336.  The court stated that, while "privacy" is not defined, and can imply several meanings, it is insufficient to create ambiguity and, when read within the context of the policy, it is clear that the term "privacy" is confined to secrecy interests.  Id. at 336-37.  The court also found that the other offenses, under the "advertising injury" definition, specifically focus on the message contained in the covered materials and that none of the other provisions address the intrusive nature of the method used to convey the message.  Id. at 337.  There, the underlying action did not complain about the content of the faxes but focused on the monetary costs caused by the depletion of class member's resources that resulted from the unauthorized faxes.  Id.

Here, the Court is presented with the exact same set of circumstances as those presented in Brethren: the policy language is exactly the same; the underlying complaint similarly alleged that the unsolicited faxes imposed costs without authorization of the class members; and the

underlying action similarly complained about the monetary costs caused by the deletion of class members' resources, not about the content of any of the faxes.  Accordingly, for the same reasons as those espoused by the <u>Brethren</u> court, this Court concludes that Defendant did not fall within the "advertising injury" coverage provisions.

In sum, for the reasons discussed, the Court finds neither Plaintiff Cumberland or Plaintiff MCC owes Defendant a duty to defend or indemnify under their respective insurance policies.

## V.  CONCLUSION

For the foregoing reasons, the Court grants Plaintiff Cumberland Mutual Fire Insurance Company's Motion for Summary Judgment.  The Court also grant Plaintiff Maryland Casualty Company's Motion for Summary Judgment.  An appropriate Order follows.